# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| LACINDA G. CARAWAY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-15-362-SPS |
| | ) |
| NANCY A. BERRYHILL, | ) |
| Acting Commissioner of the Social | ) |
| Security Administration,[1] | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

The claimant Lacinda G. Caraway requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons set forth below, the Commissioner's decision is hereby REVERSED and the case is REMANDED for further proceedings.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of

---

[1] On January 20, 2017, Nancy A. Berryhill became the Acting Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Berryhill is substituted for Carolyn W. Colvin as the Defendant in this action.

such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts

---

[2] Step One requires the claimant to establish that she is not engaged in substantial gainful activity. Step Two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951). *See also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born April 19, 1976, and was thirty-eight years old at the time of the administrative hearing (Tr. 118). She has a high school education and vocational training in cosmetology, and has worked as an administrative assistant, cashier checker, sales clerk, and cosmetologist (Tr. 193, 634). The claimant alleges she has been unable to work since an amended onset date of January 1, 2012, due to chronic back pain, back surgeries, back injury, fibromyalgia, depression, arthritis, hypoglycemia, migraine headaches, sleep apnea, and a temporomandibular joint disorder (Tr. 192).

## Procedural History

On July 23, 2013, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. Her applications were denied. ALJ James Bentley conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated March 23, 2015 (Tr. 11-40). The Appeals Council denied review, so the ALJ's opinion represents the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity ("RFC") to perform sedentary work as

defined in 20 C.F.R. §§ 404.1567(a), 416.967(a), except that she could occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl, and could never climb ladders, ropes, or scaffolds (Tr. 21). Additionally, he found she required a sit/stand option, defined as a temporary change in position from sitting to standing and vice versa with no more than one change in position every twenty minutes (Tr. 21). Due to psychologically based symptoms, the ALJ also found the claimant could remember and carry out simple tasks with routine supervision, and could have occasional contact with coworkers, supervisors, and the general public (Tr. 21). The ALJ concluded that although the claimant could not return to her past relevant work, she was nevertheless not disabled because there was work she could perform, *i. e.*, document preparer, clerical mailer, and production worker (Tr. 37).

## Review

The claimant contends that the ALJ erred by failing to properly analyze the opinions of treating physician Dr. Nance Weddle, and consultative examiner Dr. Ronald Schatzman. The Court finds that the ALJ did fail to properly analyze Dr. Weddle's opinion, and the decision of the Commissioner must therefore be reversed and the case remanded for further proceedings.

The ALJ determined that the claimant had the severe impairments of post-surgical syndrome, lumbar spine; failed back syndrome; migraine headaches; fibromyalgia; right knee pain post-surgical meniscus repair; obesity; dysthymia, early onset; post-traumatic stress disorder; anxiety disorder, not otherwise specified; and dependent personality traits (Tr. 13). He then determined that her recurrent cystitis, status post gastric bypass

surgery, iron deficiency, anemia, hypoglycemia, allergies, gastroesophageal reflux disease, insomnia, and temporomandibular joint disorder were non-severe, and that her alleged chest pain, gallstones, and problems with her hands were medically non-determinable (Tr. 13-17). The record reflects that the claimant underwent three lumbar spine surgeries between March 2007 and August 2009. On March 22, 2007, Dr. Daniel Boedeker performed a left L5-S1 microdiskectomy with microdissection, wherein the herniated portion of her L5-S1 disc was removed (Tr. 320-21). On September 30, 2008, Dr. Patrick Han performed an L5-S1 transforaminal lumbar interbody fusion with pedicle screw instrumentation for treatment of the claimant's lumbar spondylolisthesis with radiculopathy (Tr. 346-47). Dr. Han removed the claimant's pedicle screw instrumentation on August 10, 2009 (Tr. 344-45).

The claimant established care at the Weddle Family Clinic on July 28, 2011 (Tr. 459-62). At this initial appointment, the claimant reported, *inter alia*, a history of chronic back pain that was being treated elsewhere, and Dr. Weddle noted her pain index was zero and that she had no gait deficit (Tr. 459-60). On January 30, 2012, the claimant presented to nurse practitioner Jennifer Brewer, and reported body aches for "several years," that increased with activity (Tr. 444). Ms. Brewer found that the claimant had a pain index of three, full range of motion in her neck, and normal muscle tone and strength, but that she was tender to palpation in her upper and lower extremities (Tr. 444-45). Ms. Brewer diagnosed the claimant with fibromyalgia, and prescribed a nerve pain medication (Tr. 445). The claimant reported the nerve pain medication was effective at follow-up appointments on February 20, 2012, and March 19, 2012, and Ms. Brewer

noted that the claimant's fibromyalgia was controlled on April 18, 2012 (Tr. 437-43). By August 2012, the claimant was exercising for one hour per day, her pain index was five, and her musculoskeletal exam was normal (Tr. 433-34). At a follow-up appointment on December 28, 2012, the claimant reported that chronic pain prevented her from working, doing things at home, crocheting, camping, grocery shopping, playing with her children, standing in the shower, and sometimes getting out of bed (Tr. 425-26). Dr. Weddle found the claimant had a pain index of six, as well as 12/18 fibromyalgia tender points, and opined that because the claimant's pain was "already limiting her functioning in her daily life with her family, she would not be able to sustain gainful employment." (Tr. 425-26). On November 18, 2013, the claimant returned to Dr. Weddle for a fibromyalgia evaluation, and described the intensity of her tender points as severe (Tr. 361). The claimant's straight leg raise test was positive bilaterally, and Dr. Weddle noted that she could not rise from a seated position without using the arms of the chair (Tr. 362). Dr. Weddle ordered a lumbar spine MRI, the results of which revealed moderate left L4-5 lateral recess narrowing secondary to facet hypertrophy and autologous bone grafting, no significant central canal or neuroforaminal narrowing, and reflected her prior surgeries (Tr. 384).

The claimant presented to Dr. Thomas Craven on February 20, 2014, and reported moderate lumbar pain and soreness radiating to her legs (Tr. 540-42). Dr. Craven noted the claimant's gait, coordination, balance, and posture were normal (Tr. 541). He found she was tender to palpation in her midline, and her lumbar range of motion was limited by pain, but she had painless range of motion in her hips (Tr. 541). Dr. Cravens found no

focal motor reflex, sensory deficit, weakness, or tenderness in her legs (Tr. 541). He reviewed the claimant's January 2014 MRI, and stated it was normal for her age, showing a solid L5-S1 fusion and no compressive pathology (Tr. 542). Dr. Craven found no surgical indication, and referred the claimant for pain management (Tr. 542).

The claimant returned to Dr. Weddle on March 14, 2014, for pain management (Tr. 357-58). She observed that the claimant ambulated without an assistive device, and could not rise from a seated position without using the arms of the chair (Tr. 358). The claimant's pain management goals were to stand when showering, and to attend Sunday school (Tr. 358). By July 2014, Dr. Weddle noted the claimant met her pain management goals, her pain index was four, and her musculoskeletal exam was normal (Tr. 563-64). By September 24, 2014, the claimant reported working out with her husband, and her pain index was zero (Tr. 560-61). At a follow-up appointment on October 29, 2014, the claimant reported that her pain medication was helpful, but not strong enough (Tr. 554-55). She stated she was in a lot of pain from fibromyalgia, but was trying very hard to lose weight, walked a mile each day, and did the things around the house that she needed to do (Tr. 554). Her pain index was six, and her musculoskeletal exam was normal (Tr. 555).

On October 31, 2013, Dr. Ronald Schatzman conducted a consultative physical examination (Tr. 522-32). He noted in his written summary that the claimant had reduced range of motion in her cervical spine with generalized tenderness in her upper cervical area, but indicated she had full range of motion with tenderness in her cervical spine on the attached worksheet (Tr. 524, 529). He found the claimant's thoracic spine

was non-tender with full range of motion, her lumbar-sacral spine was tender with reduced range of motion, her straight leg tests were positive bilaterally, and that she had 18/18 positive fibromyalgia tender points (Tr. 524, 529). Dr. Schatzman observed the claimant's gait was safe and stable with appropriate speed, but that she slightly dragged her left foot (Tr. 524). He concluded that the claimant was significantly impaired from activities of daily living (Tr. 525).

On November 12, 2013, and April 18, 2014, state reviewing physicians found the claimant could perform light work (Tr. 41-53). Additionally, they indicated that the claimant could frequently climb ramps/stairs and balance; could occasionally stoop, kneel, crouch and crawl; and could never climb ladders, ropes or scaffolds (Tr. 41, 47).

At the administrative hearing, the claimant testified that her migraine headaches and back problems were her most significant impairments (Tr. 616). She further testified that she experiences migraine headaches every few days to every other day, and that they last "a couple of hours to a few days." (Tr. 624). Additionally, the claimant stated that she spends most of her day either in a recliner or in bed (Tr. 625). As to specific limitations, she stated that she could sit for thirty to forty-five minutes before needing to stand up and stretch, could stand for ten minutes, and could lift five-to-ten pounds (Tr. 619, 625).

In his written opinion, the ALJ summarized the claimant's testimony as well as the medical evidence and various opinions by the treating, consultative, and reviewing physicians. As to the relevant opinion evidence in the record, the ALJ gave little weight to Dr. Weddle's December 2012 opinion that the claimant would not be able to sustain

gainful employment because: (i) Dr. Weddle was not a specialist; (ii) her opinion was inconsistent with other substantial evidence, including her own treatment notes, the claimant's January 2014 MRI, and Dr. Craven's report; and (iii) the claimant's statements at her December 2012 visit appeared to be motivated, in part, by a desire to obtain assistance with her utilities (Tr. 31-32). The ALJ specifically noted from Dr. Weddle's treatment notes that she encouraged the claimant to increase her physical activity, the claimant met her pain control goals in July 2014, and her physical examinations were largely within normal limits (Tr. 32). Similarly, the ALJ gave diminished weight to Dr. Schatzman's opinion that the claimant was significantly impaired from activities of daily living because: (i) he was not a treating provider; (ii) his opinion was inconsistent with other substantial evidence in the record, including Dr. Weddle's treatment notes, the claimant's January 2014 MRI, Dr. Craven's report, and the claimant's own admissions (Tr. 33). The ALJ then assigned significant, but not great, weight to the State Agency physicians' opinions (Tr. 33). He found the claimant was more limited in her exertional abilities, and thus limited her to sedentary work (Tr. 33). The ALJ rejected the State Agency physicians' opinions that the claimant was limited to frequent balancing, and added the requirement for a sit/stand option, but otherwise adopted their postural limitations (Tr. 33).

The claimant contends that the ALJ erred at step four by rejecting the opinion of her treating physician Dr. Weddle, *inter alia*, by basing such rejection upon the ALJ's negative assessment of the claimant's credibility. At the time of the ALJ's decision, this assessment was known as a credibility determination and was governed by Soc. Sec. Rul.

96-7p.  *See, e.g., Hardman v. Barnhart*, 362 F.3d 676, 678 (10th Cir. 2004), *quoting* Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *4 (July 2, 1996). But the Commissioner issued a new ruling on March 16, 2016 that eliminated the term "credibility" and provided new guidance for evaluation of the claimant's subjective statements regarding intensity, persistence and pace, and the limiting effects of her symptoms reported by a claimant. Soc. Sec. Rul. 16-3p, 2016 WL 1119029 (Mar. 16, 2016). "Generally, if an agency makes a policy change during the pendency of a claimant's appeal, the reviewing court should remand for the agency to determine whether the new policy affects its prior decision." *Frantz v. Astrue*, 509 F.3d 1299, 1302 (10th Cir. 2007), *quoting Sloan v. Astrue*, 499 F.3d 883, 889 (8th Cir. 2007). Although the ALJ's credibility analysis was arguably sufficient under the old standard, the record does not reflect how the ALJ would have evaluated the claimant's subjective statements under Soc. Sec. Rul. 16-3p.[3] Consequently, the decision of the Commissioner must be reversed and the case remanded to the ALJ for an evaluation in accordance with the new standard and a determination what impact, if any, such re-evaluation has upon the ALJ's determination of disability.

---

[3] While it is arguable that the evidence cited by the ALJ in support of his credibility determination would likewise have satisfied Soc. Sec. Rul. 16-3p, thus obviating the need for reversal and remand, *see, e. g., Wellenstein v. Colvin,* 2015 WL 5734438, at *11 (N.D. Iowa Sept. 30, 2015) (noting that the Court of Appeals for the Eighth Circuit denied remand for consideration of a new social security ruling upon finding that "although the policy changed during the pendency of the case, the policy did not affect the case."), *citing Van Vickle v. Astrue,* 539 F.3d 825, 829 n.6 (8th Cir. 2008), the undersigned Magistrate Judge finds that any re-evaluation of the evidence in light of the new standard is not for this court to make on review but rather for the ALJ to consider in the first instance.

## Conclusion

In summary, the Court FINDS that the ALJ did not apply correct legal standards, and the Commissioner's decision is therefore not supported by substantial evidence. The decision of the Commissioner is accordingly REVERSED and the case REMANDED for further proceedings consistent herewith.

**DATED** this 24th day of March, 2017.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**